IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEIDI ZAMECNIK, a minor, by and through her parents, LINDA ZAMECNIK and CARL ZAMECNIK, and ALEXANDER NUXOLL, a minor, by and through his parents, MICHAEL and PENNY NUXOLL, <br><br> Plaintiffs, <br><br> v. <br><br> INDIAN PRAIRIE SCHOOL DISTRICT #204 BOARD OF EDUCATION, HOWARD CROUSE, in his official capacity as Superintendent of Indian Prairie School District #204, MICHAEL POPP, in his official capacity as Principal of Neuqua Valley High School, and BRYAN WELLS, individually and in his official capacity as Dean of Students Neuqua Valley High School, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 07 C 1586 |

## MEMORANDUM OPINION AND ORDER

### A. INTRODUCTION

Heidi Zamecnik and Alexander Nuxoll, high school students suing by their parents, move for preliminary relief to enjoin school officials from preventing them from expressing their opposition to homosexuality by engaging in a day of silence and

expressing their views with a specific message. The issue before the court is very narrow. The school officials have made clear that they do not intend to prohibit plaintiffs from expressing opposition to homosexuality, but that they oppose only, as derogatory, the use of the phrase "Be Happy, Not Gay" on a t-shirt, button, or sticker. School officials indicate that a positively-worded phrase such as "Be Happy, Be Straight" would be acceptable. They liken the phrase "Be Happy, Not Gay" to expressions such as "Be Happy, Not Christian," "Be Happy, Not Jewish," or "Be Happy, Not Muslim," which they say would be an offensive interference with the rights of other students and pose a risk of disruption in a secondary school setting where they are responsible for young students and an educational mission.

Plaintiffs Heidi Zamecnik and Alexander Nuxoll are students at Neuqua Valley High School ("NVHS"), which is part of Indian Prairie School District No. 204. The high school is located in Naperville, Illinois, one of Chicago's most populous suburbs, and has approximately 4200 students, including a variety of races, religions, ethnic backgrounds, and sexual orientations. Zamecnik is a senior and Nuxoll is a freshmen.[1]  The Board of

_____

[1]The case is brought on each student's behalf by each student's parents. For simplicity in presentation, today's ruling will refer to the students themselves as the plaintiffs.

Education of District 204, the District's Superintendent, NVHS's Principal, and NVHS's Dean of Students are named as defendants.

The Gay/Straight Alliance ("GSA") student group at NVHS has activities scheduled at the school for a "Day of Silence" on April 18, 2007. This is a day intended to protest anti-gay discrimination and express support for tolerance of gays. It is part of a national event sponsored by the Gay, Lesbian and Straight Education Network. This event has occurred at NVHS since 2003. Zamecnik was at school for Days of Silence in her freshman, sophomore, and junior years. On the Day of Silence, some students wear labels identifying them as Day of Silence Participants. They generally remain silent during the day, but may be required to speak in classes or when a spoken response is deemed necessary by a school staff member. Many students and some staff members wear shirts during the day expressing their support for GSA. In 2006, this shirt included the phrase "Be Who You Are."

Plaintiffs profess sincere Christian religious beliefs which condemn homosexual behavior as immoral. They also believe that homosexual behavior is damaging to homosexual individuals as well as society in general. This year and in the past, the Alliance Defense Fund ("ADF") has promoted an event called the "Day of Truth" for the day after the Day of Silence. They promote wearing a shirt that has the ADF logo and "day of truth"

- 3 -

on the front and "The Truth cannot be silenced" and the Day of
Truth organization's website address on the back.

In 2006, Zamecnik remained silent on the day after the
Day of Silence. She also wore a t-shirt that had "Be Happy, Not
Gay" on the back. School officials, however, required that she
cross off "Not Gay." While plaintiffs' complaint includes claims
for nominal damages regarding the 2006 events, those claims are
not the subject of today's ruling. Presently before the court is
plaintiffs' motion for preliminary injunction regarding speech
activity they desire to engage in on this year's Day of Truth,
April 19, 2007. Both plaintiffs desire to remain silent on that
day. Defendants have represented that they will permit
plaintiffs to remain silent in the same manner that is permitted
on the Day of Silence. That is, plaintiffs may remain silent
except as required for classroom activity or when speech is
deemed necessary by school staff. This is acceptable to
plaintiffs, so their remaining silent on April 19 is not at issue
regarding the preliminary injunction.

As to any buttons, stickers, or t-shirts that plaintiffs
may display or wear this year, defendants have represented they
will permit the t-shirt promoted by ADF for the Day of Truth.
Defendants would also permit positive statements such as "Be
Happy, Be Straight" or "Straight Alliance." Defendants, however,
will not voluntarily permit negative statements that are

- 4 -

derogatory of homosexuals. Plaintiffs' intention on April 19 is
to display or wear buttons, stickers, or t-shirts containing the
message "Be Happy, Not Gay." Defendants consider "Not Gay" to be
an offensive, derogatory message. The narrow issue presently
before the court is whether plaintiffs are entitled to a
preliminary injunction prohibiting defendants from forbidding
that they display, while in school, the message "Not Gay" as part
of the phrase "Be Happy, Not Gay."

        Ordinarily, when material factual issues are in dispute,
a motion for preliminary injunction should not be resolved,
particularly in favor of granting relief, without first providing
an opportunity for the presentation of live testimony. See
United States v. Board of Education of City of Chicago, 11 F.3d
668, 672 (7th Cir. 1993); Charles Alan Wright, Arthur R. Miller,
& Mary Kay Kane, Federal Practice & Procedure Civil 2d § 2949
at 222-30 (1995). However, one or both parties can agree to have
any factual disputes resolved on written submissions. See id.
at 230. Also, if written submissions indicate there is no
material factual dispute, the motion can be resolved on written
submissions. Id. at 221-22. In making factual determinations
for preliminary relief, the court is not limited to evidence that
would be admissible at trial nor are the affidavits required to
comport with the stricter rules applicable to summary judgment
affidavits. See id. at 215-20.

Here, plaintiffs created unnecessary time constraints. Plaintiff Zamecnik witnessed the Day of Silence during her first three years of high school. She certainly had reason to believe it would be held again this April. In April 2006, Zamecnik had a dispute with school officials regarding wearing a "Be Happy, Not Gay" t-shirt the day after the Day of Silence. Zamecnik could have brought a lawsuit shortly after that incident in order to have time to resolve the merits of the issue prior to April 2007.[2] Instead, she waited more than 11 months to file the present lawsuit. Even after the two plaintiffs filed their lawsuit on March 21, 2007, they waited another nine days and then noticed their preliminary injunction motion for presentation on April 4, 2007, two weeks after the complaint was filed. They then asked for a short briefing schedule and a ruling before April 19. That time frame did not allow any time for discovery nor sufficient time to both submit briefs and hold a hearing. The court advised plaintiffs that a ruling before April 19 was only possible if they agreed to present the motion based on either stipulated facts agreed to by the parties or affidavits, declarations, and other written submissions. Also, because the time constraints created by plaintiffs would not allow defendants

---

[2]Plaintiff Nuxoll does not identify when he first learned that the Day of Silence would take place at NVHS. It was sometime prior to signing his March 15, 2007 affidavit.

- 6 -

an opportunity to present witnesses, the court advised plaintiffs that it would resolve factual disputes in defendants' favor. <u>Cf.</u> <u>Fenje v. Feld</u>, 2002 WL 1160158 *2 (N.D. Ill. May 29, 2002). Plaintiffs do not object to these procedures. Additionally, in their reply, plaintiffs do not expressly state a disagreement with any of the facts submitted by defendants. Unless lacking any support or overcome by clear and convincing evidence of plaintiffs, the description of the facts set forth in defendants' answer to the preliminary injunction motion will be taken as true. Facts supported by plaintiffs' submission for which defendants submit no contrary support will also be taken as true.

## B. FINDINGS OF FACT

1. Plaintiff Heidi Zamecnik is a 17-year-old[3] senior at Neuqua Valley High School ("NVHS"). Plaintiff Alexander Nuxoll is a 14-year-old freshman at NVHS.

2. Both plaintiffs label their religion as "evangelical Christian." They have sincerely held religious beliefs that homosexual behavior is immoral and contrary to biblical teachings.

---

[3]In their answer to the Complaint, defendants deny Zamecnik is still a minor, implying she turned 18 after the Complaint was filed in March 2007. If Zamecnik is now 18, she should move to substitute herself as a plaintiff in place of her parents as plaintiffs acting on her behalf.

3. Both plaintiffs also believe that homosexual behavior is damaging to the participants and society at large and that it does not lead to happiness. It is taken as true that plaintiffs believe these statements to be factually true.

4. NVHS is located in Naperville, Illinois, a suburb of Chicago, and is part of Indian Prairie School District No. 204 ("District 204").

5. Defendants in this action are: (a) the Board of Education of District 204 (the "Board"); (b) Howard Crouse, in his official capacity as Superintendent of District 204; (c) Michael Popp, in his official capacity as Principal of NVHS; and (d) Bryan Wells, Dean of Students of NVHS, in his individual and official capacities.

6. NVHS opened in 1997. It has approximately 4200 students. The student population is comprised of individuals of varying races, religions, ethnic backgrounds, and sexual orientations.

7. Since its opening, NVHS has faced a number of disruptive situations arising from derogatory, offensive, or demeaning symbols or statements, including Confederate flags and anti-Muslim threats following September 11, 2001.

8. Gay students at NVHS have faced harassment and threats of violence.[4]

9. Recognizing that confrontations between students based on race, ethnicity, religion, or sexual orientation can seriously interfere with the educational mission of District 204's schools, the Board and school administrators have engaged in a considerable effort to create a positive and tolerant school environment with an emphasis on respectful attitudes and discourse.

10. The Board has enacted various policies relating to student conduct. Policy 710.01 is entitled "Student Rights and Responsibilities" and states in part:

> C. To show consideration and respect for the school faculty, staff, schoolmates and others in our buildings;
> D. To become informed of and adhere to reasonable school rules and regulations;
> E. To respect the rights and individuality of other students and school administrators and teachers and to refrain from behavior that infringes on the rights of others;

---

[4]This fact is supported by hearsay and a newspaper article. While accorded less weight than nonhearsay evidence, both may be considered on a motion for preliminary injunction. See SEC. v. Cherif, 933 F.2d 403, 412 n.8 (7th Cir. 1991), cert. denied, 502 U.S. 1071 (1992); Gernetzke v. Kenosha Unified School District No. 1, 274 F.3d 464, 466 (7th Cir. 2001), cert. denied, 535 U.S. 1017 (2002); In re Ameriquest Mortgage Co., 2006 WL 1525661 *3 (N.D. Ill. May 30, 2006); Federal Practice & Procedure § 2949 at 217-19. Plaintiffs present no evidence that harassment of gays has not occurred at NVHS.

11. The Student Handbook for NVHS lists some examples of an "act of misconduct" and the potential disciplinary action for each type of act. Example 5 is: "Possession of literature or images and/or use of slurs, derogatory comments that refer to race, ethnicity, religion, gender, sexual orientation, or disability." Board Policy 710.07 entitled "Student Appearance" includes a prohibition of wearing "garments or jewelry with messages, graphics or symbols . . . which are derogatory, inflammatory, sexual, or discriminatory."

12. NVHS emphasizes respect for others as part of its educational program. This includes that the student discipline video shown to students annually emphasizes the need to respect others and that students attend advisory classes which often include discussions of the importance of respecting people's differences and the harmful effects of derogatory or demeaning communications.

13. In 2001, the Gay/Straight Alliance ("GSA") was formed as an officially recognized student group at NVHS. Its mission statement is to foster a safer and more accepting environment for students of all sexual orientations through support and education, promoting awareness and human rights, and building and preserving dignity and respect of all individuals.

14. NVHS claims not to endorse the viewpoints of the GSA student group.

15. NVHS has permitted students to have religious messages on student attire. It would only censor religious messages that include statements condemning or denigrating other students.

16. There is no evidence that NVHS has knowingly permitted students to wear or display messages that are derogatory of any racial, ethnic, religious, or sexual orientation group. There is no evidence that it has permitted messages derogatory of Christian beliefs or being of heterosexual orientation.

17. Since 2003, GSA has sponsored a Day of Silence event at NVHS. This is part of a national event promoted by the Gay, Lesbian and Straight Education Network. NVHS permits this event as a GSA student activity. GSA's scheduling of activities for the day is coordinated with the school administration in advance to avoid undue disruption. GSA is permitted to issue written communications to students informing them about an upcoming event. The 2006 Day of Silence was on April 19, 2006. This year's Day of Silence is scheduled for April 18, 2007.

18. The Day of Silence is intended to protest anti-gay bullying, harassment, and discrimination and promote tolerance of gays. A theme is that gays have been silenced by the harassment and discrimination. Gay and straight participants protest such

treatment and show support for tolerance of gays by remaining
silent for the day.

19.    Participants in the silence are issued labels
stating "Day of Silence Participant."  Student participants are
permitted to remain silent throughout the day, except to the
extent that their speech is required for a classroom activity or
in other circumstances where school staff deem it necessary for
them to communicate orally.  For the 2006 Day of Silence,
approximately 150 NVHS students were issued Participant labels.

20.    For the 2006 Day of Silence some students and school
staff wore shirts related to the Day of Silence.  A common shirt
had these messages:

                    G
       front:  NVHS       back:  Be Who You Are
                    A

21.    The fact that some school staff participated in the
2006 Day of Silence detracts, to some extent, from the professed
neutrality of the school administration with respect to this
event.

22.  The affidavits of Zamecnik and her brother Mike, who
was an NVHS senior in April 2006, support that, during the 2006
Day of Silence, up to a dozen students wore t-shirts that
included "Day of Silence Night of Noise."  This testimony is
accepted as true.  It is also accepted as true that no NVHS

administrator was aware of such shirts being worn at school that day. Even if "Night of Noise" is construed as a reference to sexual activity, it is a question distinct from banning derogatory messages whether such shirts would be a violation of prohibitions on garments with "sexual" messages.

23. There is no evidence that past Days of Silence have involved students displaying messages condemning heterosexual orientation or condemning being a Christian or other religious denomination.

24. On April 20, 2006, as she had on the day after the two previous Days of Silence, plaintiff Zamecnik chose to be silent in order to express her opposition to homosexual behavior. School officials permitted plaintiff to be silent on this day and she was not punished for being silent.

25. Also on April 20, 2006, plaintiff Zamecnik chose to wear a shirt with a message. The front of the shirt had "My Day of Silence, Straight Alliance" and the back had "Be Happy, Not Gay."

26. Unidentified students complained to school staff about the shirt Zamecnik was wearing. During her lunch period and possibly for a little time thereafter, Zamecnik met with defendant Dean of Students Wells. Zamecnik was permitted to maintain oral silence and communicate in writing. Wells advised plaintiff that some students were offended by the shirt and spoke

about respecting other students. After Wells spoke with Zamecnik's mother on the telephone, "Not Gay" was crossed off Zamecnik's shirt and she was permitted to continue on with the school day.[5] Zamecnik was not disciplined and no record of the incident was placed in Zamecnik's student record.

27. GSA is sponsoring another Day of Silence scheduled for April 18, 2007. There is no reason to expect that the conduct of this year's Day of Silence will be significantly different from what occurred in 2006.

28. An organization known as the Alliance Defense Fund ("ADF") sponsors an event known as the "Day of Truth" for the day following the Day of Silence. This year's event will be April 19, 2007. Its website states: "The **Day of Truth** was established to counter the promotion of the homosexual agenda and express an opposing viewpoint from a Christian perspective."

29. ADF recommends a particular t-shirt be worn on the Day of Truth and that it not be altered. The front has the ADF logo on the sleeve and "day of truth" in a speaking balloon (like the balloons used for spoken text in a cartoon). The back of the shirt states "The Truth cannot be silenced. www.**dayoftruth**.org."

---

[5]For purposes of ruling on the motion for preliminary injunction, it is unnecessary to resolve disputes regarding the contents of the telephone discussion and whether either side had agreed that "Not Gay" would be replaced with "Be Straight."

30. Plaintiffs are represented by ADF in this litigation. Plaintiffs, however, do not express a desire to be part of ADF's organized Day of Truth activities. Plaintiffs independently desire to have their own form of counterprotest on the day after the Day of Silence.

31. Plaintiffs desire to remain silent on April 19, 2007. Plaintiffs also intend to wear or display shirts, buttons, or stickers containing the message "Be Happy, Not Gay."

32. Defendants will permit plaintiffs to remain silent on April 19, 2007, with the same exceptions imposed as are imposed on Day of Silence Participants.

33. Defendants will not permit plaintiffs to display the phrase "Not Gay" as part of the message "Be Happy, Not Gay." They also would not permit other messages negatively referring to being gay. Defendants would permit messages promoting being heterosexual. The message "Be Happy, Be Straight" would be permitted. Defendants would also permit the "My Day of Silence, Straight Alliance" message that Zamecnik wore in 2006. The shirt suggested by the Day of Truth organization would also be permitted.

34. Defendants point to the Ninth Circuit taking judicial notice, largely based on law review articles, of the fact that derogatory and negative statements about homosexuality tend to harm homosexual youth by lowering their self-esteem and

creating related problems.  See Harper v. Poway Unified School
District, 445 F.3d 1166, 1178-80 (9th Cir. 2006), vacated as
moot, 127 S. Ct. 1484 (2007).  See also Parker v. Hurley, ___
F. Supp. 2d ___, 2007 WL 543017 *14 (D. Mass. Feb. 23, 2007)
(quoting Harper).  In their reply, defendants do not dispute this
fact.  It is taken as true that derogatory and negative
statements about homosexuality tend to harm homosexual high
school students by lowering their self-esteem and creating
related problems.

### C. CONCLUSIONS OF LAW

The burden is on plaintiffs to establish that they are
entitled to a preliminary injunction.  Christian Legal Society v.
Walker, 453 F.3d 853, 859 (7th Cir. 2006).

> To win a preliminary injunction, a party
> must show that it is reasonably likely to succeed
> on the merits, it is suffering irreparable harm
> that outweighs any harm the nonmoving party will
> suffer if the injunction is granted, there is no
> adequate remedy at law, and an injunction would
> not harm the public interest.  Joelner v. Vill.
> of Wash. Park, 378 F.3d 613, 619 (7th Cir. 2004).
> If the moving party meets this threshold burden,
> the district court weighs the factors against one
> another in a sliding scale analysis, id., which
> is to say the district court must exercise its
> discretion to determine whether the balance of
> harms weighs in favor of the moving party or
> whether the nonmoving party or public interest
> will be harmed sufficiently that the injunction
> should be denied.

Id.

The central question before the court is whether a high

school may prohibit negative speech about homosexuality as part

of its pedagogical mission to promote tolerance of differences

among students. Although involving a more invective derogatory

statement about homosexual conduct than in the present case, the

Ninth Circuit upheld the denial of preliminary relief for a high

school student contending that his school improperly denied him

the right to wear a shirt condemning homosexual activity. See

Harper v. Poway Unified School District, 445 F.3d 1166 (9th Cir.

2006), vacated as moot, 127 S. Ct. 1484 (2007) (student wore

shirt containing "BE ASHAMED, OUR SCHOOL EMBRACED WHAT GOD HAS

CONDEMNED" and "HOMOSEXUALITY IS SHAMEFUL"). At least one

district court has reached a contrary conclusion. See Nixon v.

Northern Local School District Board of Education, 383 F. Supp.

2d 965 (S.D. Ohio 2005) (granted permanent injunction prohibiting

middle school from preventing eighth grade student from wearing

shirt that included "Homosexuality is a sin! Islam is a lie!

Abortion is murder!" unless an imminent and substantial

disruption became likely). For the reasons discussed below,

Harper is more consistent with Seventh Circuit precedents

regarding the free speech rights of students than is Nixon.

Harper was vacated by the Supreme Court when the case was

dismissed as moot in the district court. Harper, though,

may still be considered for its persuasive authority. See

<u>Christianson v. Colt Industries Operating Corp.</u>, 870 F.2d 1292, 1298-99 (7th Cir.), <u>cert. denied</u>, 493 U.S. 822 (1989); <u>Pfizer Inc. v. Novopharm Ltd.</u>, 2001 WL 477163 *3 (N.D. Ill. May 3, 2001). Decisions of other circuits are to be given respectful consideration and followed where possible. <u>See</u> <u>Colby v. J.C. Penny Co.</u>, 811 F.2d 1119, 1123 (7th Cir. 1987).

It is well established that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." <u>Tinker v. Des Moines Independent Community School District</u>, 393 U.S. 503, 506 (1969). <u>Accord</u> <u>Boucher v. School Board of School District of Greenfield</u>, 134 F.3d 821, 825 (7th Cir. 1998). However, "the First Amendment rights of students in the public schools are not automatically coextensive with the rights of adults in other settings and must be applied in light of the special characteristics of the school environment." <u>Boucher</u>, 134 F.3d at 827 (quoting <u>Hazelwood School District v. Kuhlmeier</u>, 484 U.S. 260, 266 (1988)). Plaintiffs contend that the free speech rights of students fall into three clearly delineated and distinct categories of analysis. One, as represented by the case of <u>Bethel School District No. 403 v. Fraser</u>, 478 U.S. 675 (1986), schools may restrict student speech that is vulgar, lewd, indecent, or plainly offensive. Two, as represented by the case of <u>Hazelwood</u>, schools may restrict speech that is school sponsored (such as school-sponsored newspapers)

provided that the restriction is "reasonably related to a
legitimate pedagogical interest." 484 U.S. at 273. Three, based
on Tinker, schools may restrict private student speech that
"materially and substantially interfere[s] with the requirements
of appropriate discipline in the operation of the school,"
Tinker, 393 U.S. at 509 (quoting Burnside v. Byars, 363 F.2d 744,
749 (5th Cir. 1966)), in that it "would substantially interfere
with the work of the school or impinge upon the rights of other
students," Tinker, 393 U.S. at 509. This last category can be
more succinctly labeled as a substantial disruption standard.
There is no dispute that the present case does not involve lewd
speech in the Fraser sense and that the speech of plaintiffs that
is at issue is not school-sponsored speech.

        In plaintiffs' view, the three categories do not overlap.
This view is supported by Saxe v. State College Area School
District, 240 F.3d 200, 212-14 (3d Cir. 2001). Under this view,
mere speech can only offend the rights of other students if it
satisfies the Fraser standard of lewd or highly offensive. See
Saxe, 240 F.3d at 213. Also under this view, legitimate
pedagogical concerns only come into play if the speech is school
sponsored. Id. at 213-14. Under this view, the only appropriate
consideration in the present case would be whether the speech
that defendants attempt to regulate has a sufficient potential to
create the type of disruption that is a concern of Tinker.

In Nixon, the court recognized this tripartite analysis. Nixon, 383 F. Supp. 2d at 969. It excluded the Hazelwood analysis from consideration because the case did not involve school-sponsored speech. Id. at 969-70. Because the Fraser standard was not satisfied, Nixon rejected arguments that the speech at issue was offensive. Id. at 970-71. Applying Tinker, the court did not find there to be a sufficient likelihood of a material disturbance. Id. at 972-74. The court did not find the consideration of the "rights of others" prong of Tinker to be controlling. Nixon, 383 F. Supp. 2d at 974. It noted that it was aware of no case that had upheld a restriction based on this prong, but did not rule it completely out on that ground. Nixon held that the Tinker reference to the rights of others should be understood to be "the rights of other students to be secure and to be let alone." Nixon, 383 F. Supp. 2d at 974 (quoting Tinker, 393 U.S. at 508). Nixon found that the plaintiff's silent, passive expression of an opinion on his shirt did not interfere with the rights of others to be let alone any more than did the wearing of arm bands in the Tinker case. Nixon, 383 F. Supp. 2d at 974.

Harper does not view the "rights of others" prong of Tinker, including the right to be secure and left alone, as narrowly as is urged by plaintiffs in the present case or as was held in the Nixon case. Harper, 445 F.3d at 1177-78.

We conclude that Harper's wearing of his T-shirt "colli[des] with the rights of other students" in the most fundamental way. <u>Tinker</u>, 393 U.S. at 508. Public school students who may be injured by verbal assaults on the basis of a core identifying characteristic such as race, religion, or sexual orientation, have a right to be free from such attacks while on school campuses. As <u>Tinker</u> clearly states, students have the right to "be secure and to be let alone." <u>Id.</u> Being secure involves not only freedom from physical assaults but from psychological attacks that cause young people to question their self-worth and their rightful place in society.

<u>Harper</u>, 445 F.3d at 1178. The court recognized a school's interest, if not duty, to protect minority groups from harassing conduct. The court also took judicial notice that derogatory statements about gays has a tendency to cause actual harm to gay youth. <u>Id.</u> at 1178-80.

<u>Harper</u> noted the narrowness of its holding:

. . . Limitations on student speech must be narrow, and applied with sensitivity and for reasons that are consistent with the fundamental First Amendment mandate. Accordingly, we limit our holding to instances of derogatory and injurious remarks directed at students' minority status such as race, religion, and sexual orientation. Moreover, our decision is based not only on the type and degree of injury the speech involved causes to impressionable young people, but on the locale in which it takes place. <u>See</u> <u>Tinker</u>, 393 U.S. at 506 (student rights must be construed "in light of the special characteristics of the school environment"). Thus, it is limited to conduct that occurs in public high schools (and in elementary schools). As young students acquire more strength and maturity, and specifically as they reach college

age, they become adequately equipped emotionally
and intellectually to deal with the type of
verbal assaults that may be prohibited during
their earlier years. Accordingly, we do not
condone the use in public colleges or other
public institutions of higher learning of
restrictions similar to those permitted here.
        Finally, we emphasize that the School's
actions here were no more than necessary to
prevent the intrusion on the rights of other
students. Aside from prohibiting the wearing of
the shirt, the School did not take the additional
step of punishing the speaker: Harper was not
suspended from school nor was the incident made a
part of his disciplinary record.

Harper, 445 F.3d at 1183.

        Also, contrary to the position taken by Nixon and Saxe,

as well as plaintiffs, Harper did not limit considerations of a

school's pedagogical interests or "basic educational mission" to

situations involving school-sponsored speech.

        "A school need not tolerate student speech
        that is inconsistent with its basic educational
        mission, [ ] even though the government could not
        censor similar speech outside the school."
        Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260,
        266 (1988) (citation and internal quotation marks
        omitted). Part of a school's "basic educational
        mission" is the inculcation of "fundamental
        values of habits and manners of civility
        essential to a democratic society." Fraser,
        478 U.S. at 681 (internal quotation marks
        omitted). For this reason, public schools may
        permit, and even encourage, discussions of
        tolerance, equality and democracy without being
        required to provide equal time for student or
        other speech espousing intolerance, bigotry or
        hatred. As we have explained, supra pp.
        1182-1183, because a school sponsors a "Day of
        Religious Tolerance," it need not permit its
        students to wear T-shirts reading, "Jews Are

Christ-Killers" or "All Muslims Are Evil Doers."
Such expressions would be "wholly inconsistent
with the 'fundamental values' of public school
education." Id. at 685-86. Similarly, a school
that permits a "Day of Racial Tolerance," may
restrict a student from displaying a swastika
or a Confederate Flag. See West, 206 F.3d
at 1365-66. In sum, a school has the right to
teach civic responsibility and tolerance as part
of its basic educational mission; it need not as
a quid pro quo permit hateful and injurious
speech that runs counter to that mission.
          We again emphasize that we do not suggest
that all debate as to issues relating to
tolerance or equality may be prohibited. As we
have stated repeatedly, we consider here only the
question of T-shirts, banners, and other similar
items bearing slogans that injure students with
respect to their core characteristics. Other
issues must await another day.

Harper, 445 F.3d at 1185-86.

          Like the Ninth Circuit in Harper, the Seventh Circuit has

not limited the consideration of pedagogical interests to

situations involving school-sponsored speech. In Muller by

Muller v. Jefferson Lighthouse School, 98 F.3d 1530 (7th Cir.

1996), cert. denied, 520 U.S. 1156 (1997), it was held that a

school's restriction on a student distributing his own religious

literature would be subject to a reasonableness standard based on

pedagogical concerns. "The test, therefore, is whether the

restrictions on student expression are 'reasonably related to

legitimate pedagogical concerns.' Hazelwood, 484 U.S. at 273.

As the Supreme Court has stressed, such 'pedagogical concerns'

include not only the structured transmission of a body of

knowledge in an orderly environment, but also the inculcation of civility (including manners) and traditional moral, social, and political norms. This approach is consistent with the firm principle that student rights must be construed 'in light of the special characteristics of the school environment,' Tinker, 393 U.S. at 506." Muller, 98 F.3d at 1540.

Muller also holds that some content-based restrictions are not permitted. While courts generally have not permitted suppression of a particular viewpoint, "even that restriction is not hard and fast with public schools, especially elementary schools." Id. at 1542. "Though it may not act unreasonably, a school need not tolerate student expression of viewpoints which are fundamentally 'inconsistent with its basic educational mission.'" Id. (quoting Hazelwood, 484 U.S. at 266). Muller also supports schools restricting speech that is insulting to the psyches of other students. "[S]chools have 'an interest in protecting minors from exposure to vulgar and offensive' speech, Fraser, 478 U.S. at 684, which includes insulting speech. Cf. Trachtmann v. Anker, 563 F.2d 512, 520 (2d Cir. 1977) ('a blow to the psyche may do more permanent damage than a blow to the chin') (Gurfein, J., concurring)." Muller, 98 F.3d at 1542.

A recent district court case from this circuit recognizes that, based on Muller, the Seventh Circuit takes a different approach to applying the tripartite analysis of speech rights of

high school students than do a number of other circuits. See
Griggs ex rel. Griggs v. Fort Wayne School Board, 359 F. Supp. 2d
731, 737-41 (N.D. Ind. 2005). Under Muller, the basic analysis
is whether a school's restriction on speech is reasonably related
to legitimate pedagogical concerns. Griggs, 359 F. Supp. 2d
at 741. Subsequent to Muller, the Seventh Circuit has continued
to indicate that a school's pedagogical interests are taken into
consideration even if the speech is not school-sponsored. See
Brandt v. Board of Education of City of Chicago, 480 F.3d 460,
467 (7th Cir. 2007); Gernetzke, 274 F.3d 464, 467 (7th Cir.
2001). See also Kelly v. Board of Education of McHenry Community
High School District 156, 2006 WL 2726231 *3 (N.D. Ill. Sept. 22,
2006). Brandt, 480 F.3d at 467-68 also supports that the Seventh
Circuit applies a highly deferential standard to the review of
the restrictions school officials place on student speech.

The Seventh Circuit has not ruled on the question of
school officials restricting student speech that is derogatory of
a category of students. It is clear, however, that the Seventh
Circuit would take into consideration legitimate pedagogical
concerns of the school as well as the school's views of its
educational mission, including inculcating rules of civility.
That is consistent with the approach taken by the Ninth Circuit
in Harper. The Seventh Circuit would hold that a high school's
interest in promoting the tolerance of differences among students

and protecting gay students from harassment is a legitimate
pedagogical concern that permits the school to restrict speech
expressing negative statements about gays. Although "Be Happy,
Not Gay" does not contain invectives as strong as those in Harper
and Nixon, it is still a negative statement disparaging of gays.
It is within defendants' discretion, see Brandt, 480 F.3d at
467-68 (discussing principal's exercise of discretion), to
prohibit such negative statements about gays and limit plaintiffs
to expressing their views in a positive manner than does not
directly disparage gays.

        The facts before the court on the preliminary injunction
motion are that the Board and NVHS promote policies of tolerance
toward and respect for differences among students. Such policies
are a legitimate pedagogical interest that defendants are
entitled to promote and protect. Defendants also have a
legitimate interest in protecting gay students at its school from
being harmed, both physically and psychologically. In a high
school setting, the interest in promoting this educational
mission permits the high school to restrict speech that expresses
an opposing view in a manner that is negative toward a group of
students. This includes restricting negative statements about
being gay that would be protected speech if regulated by a
government entity outside the context of a public high school.
Based on the facts before the court and Seventh Circuit

precedents, plaintiffs have failed to show a likelihood of success on the merits of their claim that it is a violation of plaintiffs' free speech rights for defendants to prevent them from wearing or displaying the message "Be Happy, Not Gay."

It is recognized that the threshold showing of a likelihood of success is low. It need only be shown that plaintiffs have some likelihood of success that is "better than negligible." Boucher, 134 F.3d at 824; Barker ex rel. NLRB v. Industrial Hard Chrome Ltd., 2007 WL 163204 *6 (N.D. Ill. Jan. 18, 2007). Although there is no Seventh Circuit case on point, it appears clear that the Seventh Circuit would agree with the Ninth Circuit that a high school's interest in protecting its students from harm permits the restriction that defendants will impose. But even if the existing precedents from other circuits are sufficient to provide plaintiffs with a better than negligible chance of success, it would still be a low chance. The sliding scale would then have to be applied, taking plaintiffs' low chance of success into account.

While plaintiffs have an interest in expressing their views in the manner that they choose, for purposes of weighing harms it must be considered that defendants do not attempt to suppress plaintiffs' views. Plaintiffs will still be permitted to do their silent protest and to wear or display messages positively expressing support for heterosexuality. While the

restriction from expressing "Be Happy, Not Gay" should not be
characterized as a minimal harm, it is a low, but significant,
harm in light of the alternative forms of expression that will
not be restricted.  There is also no apparent threat of
accompanying discipline, only an intention to prohibit plaintiffs
from wearing or displaying the one phrase in dispute.  On the
other side, it is an uncontested fact that derogatory statements
about being gay have a tendency to harm gay youth.  Therefore,
there is a significant likelihood of public harm if the court
errs in favor of granting a preliminary injunction.  The
potential harm of improvidently granting a preliminary injunction
appears greater than the potential harm of improvidently denying
the preliminary injunction.  Even if plaintiffs satisfy the
threshold requirement of some likelihood of success, their
likelihood of success is still less than 50%.  In light of the
balance of harms not being in plaintiffs' favor, they do not have
a sufficient likelihood of success to support granting a
preliminary injunction based on their claim that defendants have
exceeded their authority by restricting plaintiffs' right to
express themselves with the words "Be Happy, Not Gay."

        Plaintiffs also contend that defendants' restriction on
their speech constitutes improper viewpoint discrimination or an
equal protection violation. As previously set forth, Muller,
98 F.3d at 1542, holds that, as long as a school acts reasonably,

it may restrict student expressions that are inconsistent with the school's basic educational mission. The discussion applicable to plaintiffs' free speech claim is equally applicable to their viewpoint discrimination and equal protection claims. Harper, 445 F.3d at 1184-86. Also, the facts on the pending motion are that defendants do not permit any student or group to use language that is negative or derogatory about another student. In this sense, defendants do not discriminate among viewpoints. The only manner in which defendants arguably discriminate among viewpoints is that they allow expressions supporting tolerance, but not expressions supporting intolerance. But even that is not true. Plaintiffs are permitted to express their view that intolerance toward gays should be permitted as long as they do it in a manner that does not involve negative statements about gays. But even if the restrictions on plaintiffs' desired form of expression should be considered viewpoint discrimination favoring tolerance, such action could be taken as a reasonable promotion of the school's basic educational mission. Muller, 98 F.3d at 1542; Harper, 445 F.3d at 1184-86. Since plaintiffs' viewpoint discrimination and equal protection claims have no greater likelihood of success than their free speech claim, plaintiffs are also not entitled to a preliminary injunction based on their viewpoint discrimination or equal protection claim.

Plaintiffs contend that Board Policy 710.07 is a vague and overbroad restriction on speech, and an improper prior restraint. In Brandt, 480 F.3d at 467, the Seventh Circuit recently stated: "Prohibiting children from wearing to school clothing that contains 'inappropriate' words or slogans places appropriately broad limits on the school authorities' exercise of discretion to maintain a proper atmosphere. Tighter limits, expressed in precise rules, would prevent them from responding to novel challenges . . . ." Muller, 98 F.3d at 1540, holds that a school is a nonpublic forum in which prior restraint is permitted as long as it is reasonable. The reasonableness of defendants' restriction on plaintiffs' speech has already been addressed. For purposes of ruling on the preliminary injunction motion, however, it is unnecessary to resolve any challenge to the Board Policy. Separate from the existence of the Board Policy, defendants could lawfully prevent plaintiffs from engaging in the expression at issue. Cf. Harper, 445 F.3d at 1175 n.11; 1191-92 (vagueness challenge to dress code). Challenges to the Board Policy need not be resolved in order to rule on the pending preliminary injunction motion.

In a barely developed argument citing only Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990), plaintiffs contend they have a meritorious "hybrid," free exercise of religion claim that is joined with a

Plaintiffs contend that Board Policy 710.07 is a vague and overbroad restriction on speech, and an improper prior restraint. In Brandt, 480 F.3d at 467, the Seventh Circuit recently stated: "Prohibiting children from wearing to school clothing that contains 'inappropriate' words or slogans places appropriately broad limits on the school authorities' exercise of discretion to maintain a proper atmosphere. Tighter limits, expressed in precise rules, would prevent them from responding to novel challenges . . . ." Muller, 98 F.3d at 1540, holds that a school is a nonpublic forum in which prior restraint is permitted as long as it is reasonable. The reasonableness of defendants' restriction on plaintiffs' speech has already been addressed. For purposes of ruling on the preliminary injunction motion, however, it is unnecessary to resolve any challenge to the Board Policy. Separate from the existence of the Board Policy, defendants could lawfully prevent plaintiffs from engaging in the expression at issue. Cf. Harper, 445 F.3d at 1175 n.11; 1191-92 (vagueness challenge to dress code). Challenges to the Board Policy need not be resolved in order to rule on the pending preliminary injunction motion.

In a barely developed argument citing only Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990), plaintiffs contend they have a meritorious "hybrid," free exercise of religion claim that is joined with a

free speech claim. As previously discussed, however, plaintiffs do not have a sufficiently meritorious free speech claim. They also cannot show that the exercise of their sincere religious beliefs would be substantially burdened by not being able to express "Be Happy, Not Gay" while in school on a particular day. Additionally, for the reasons set forth in <u>Harper</u>, 445 F.3d at 1186-90, plaintiffs do not have a sufficiently meritorious free exercise claim that would support granting preliminary relief.

For the foregoing reasons, plaintiffs' motion for preliminary injunction will be denied.

IT IS THEREFORE ORDERED that plaintiffs' motion for preliminary injunction [8] is denied. A status hearing will be held on May 2, 2007 at 11:00 a.m.

ENTER:

*William T. Hart*

UNITED STATES DISTRICT JUDGE

DATED: APRIL 17, 2007