IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HEIDI ZAMECNIK and ALEXANDER )
NUXOLL, a minor, by and through )
his parents, MICHAEL and PENNY )
NUXOLL, )
 )
          Plaintiffs, )
 )
    v. )    No. 07 C 1586
 )
INDIAN PRAIRIE SCHOOL DISTRICT )
#204 BOARD OF EDUCATION, )
HOWARD CROUSE, in his official )
capacity as Superintendent )
of Indian Prairie School )
District #204, MICHAEL POPP, )
in his official capacity as )
Principal of Neuqua Valley High )
School, and BRYAN WELLS, )
individually and in his official )
capacity as Dean of Students )
Neuqua Valley High School, )
 )
          Defendants. )

## OPINION AND ORDER

Alexander Nuxoll and Heidi Zamecnik[1] are, respectively, a current and former student at Neuqua Valley High School ("NVHS"),

---

[1] Since Alexander Nuxoll is a minor, the case is brought on his behalf by his parents. For simplicity in presentation, today's ruling will refer to Alexander Nuxoll as a plaintiff and, unless otherwise indicated, "Nuxoll" will be used to refer to Alexander Nuxoll. When this case began, Zamecnik was also a minor whose claim was brought by her parents. She has since reached the age of majority and has been substituted for her parents as a plaintiff.

which is part of Indian Prairie School District No. 204 ("IPSD"). The high school is located in Naperville, Illinois, one of Chicago's most populous suburbs, and has approximately 4200 students, including a variety of races, religions, ethnic backgrounds, and sexual orientations. Zamecnik graduated in June 2007 and Nuxoll is currently a junior. The IPSD Board of Education, IPSD's Superintendent, NVHS's Principal, and NVHS's Dean of Students are named as defendants.

Previously, Zamecnik recognized that, having already graduated, she lacked standing to continue to seek injunctive relief. See Nuxoll v. Indian Prairie Sch. Dist. #204, 523 F.3d 668, 670 (7th Cir. 2008) ("Nuxoll"); Zamecnik v. Indian Prairie Sch. Dist. #204 Bd. of Educ., 2007 WL 4569720 *2 (N.D. Ill. Dec. 21, 2007) ("Zamecnik III"), rev'd in part on other grounds, Nuxoll. The Second Amended Complaint's prayer for relief, however, refers to "plaintiffs" seeking injunctive relief. "Plaintiffs," though, may refer to Nuxoll's two parrents, who are both plaintiffs suing on Nuxoll's behalf, and not Zamecnik as well. In response to defendants' motion to dismiss, there is no argument that Zamecnik has standing to seek any relief other than nominal damages. Nuxoll is continuing to seek injunctive relief. To the extent the Second Amended Complaint should be construed as seeking injunctive relief on behalf of Zamecnik, such claims

would be dismissed as moot. See Brandt v. Board of Educ. of City of Chicago, 480 F.3d 460, 463-64 (7th Cir. 2007).

The Superintendent and Principal are named in their official capacity only and the Dean is named in both his official and individual capacities. The individual capacity claims against the Dean pertain to Zamecnik's wearing of a t-shirt in April 2006. Nuxoll seeks injunctive relief preventing defendants from prohibiting him, while at school, from engaging in certain expressive activity opposing homosexual activity. Nuxoll also seeks a declaration that certain written school policies and rules are facially invalid for prohibiting expression opposing homosexual activity. Zamecnik seeks nominal damages for being prevented from wearing a t-shirt stating on the back: "Be Happy, Not Gay."[2] The express prayer for relief in the Second Amended Complaint does not request any damages on behalf of Nuxoll. In response to defendants' motion to dismiss, plaintiffs indicate Nuxoll is also seeking nominal damages.

Defendants have moved to dismiss all claims except Zamecnik's damages claim on the ground that plaintiffs lack

---

[2]She also complains that Dean Wells changed the back of her shirt to "Be Happy" after saying he was changing it to "Be Happy, Be Straight." It was previously held that Wells has qualified immunity from an individual capacity damages claim based on prohibiting "Be Happy, Not Gay." Zamecnik III, 2007 WL 4569720 at *7. Zamecnik may still pursue that claim against defendants in their official capacity.

standing to pursue injunctive and declaratory relief. Defendants rely on facts outside the complaint to support that Nuxoll lacks standing. Standing goes to this court's jurisdiction to hear the case, making defendants' motion to dismiss one pursuant to Fed. R. Civ. P. 12(b)(1). RWB Serv., LLC v. Hartford Computer Group, Inc., 539 F.3d 681, 683 (7th Cir. 2008). When, as in this case, "standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with 'competent proof,' McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 237 (7th Cir.), cert. denied, 515 U.S. 1104 (1995). We have interpreted 'competent proof' as requiring a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists. NLFC, 45 F.3d at 237." Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856, 862 (7th Cir. 1996). Accord Reid L. v. Illinois State Bd. of Educ., 358 F.3d 511, 515 (7th Cir. 2004); Parus Holdings, Inc. v. Banner & Witcoff, Ltd., 585 F. Supp. 2d 995, 1000 (N.D. Ill. 2008). This "court is free to weigh the evidence to determine whether jurisdiction has been established." United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003).

The Second Amended Complaint contains the following four counts, which are based on more detailed factual allegations

separately set forth in the Complaint. Count I is labeled as "Violation of Freedom of Speech" and cites to certain provisions of the IPSD Policy Manual and the NVHS Student Handbook. It is alleged that "[d]efendants have no compelling or legitimate reason that would justify their censorship of T-shirts and religious viewpoints sought to be expressed by plaintiffs." Count II is labeled "Violation of the Free Exercise Clause" and refers to policies of defendants "substantially burden[ing] religious expression that is critical of homosexual behavior." Count III is labeled "Violation of the Equal Protection Clause" and refers to other students being permitted to express "allegedly 'positive' viewpoints on the issue of homosexual behavior" while censoring plaintiffs' and other students' "allegedly 'negative' viewpoints on the issue of homosexual behavior." Count IV is labeled "Violation of the Due Process Clause" and alleges the pertinent policies are vague.

Plaintiffs describe the challenged written policies as follows:

> 59. Indian Prairie School District publishes a policy manual that includes a section entitled "Student Appearance" (IPSD Policy). In § 710.07, this Policy states in relevant part:
> A student's dress and grooming must not disrupt the educational process, interfere with the maintenance of a positive teaching/learning climate, or compromise reasonable standards of health, safety, modesty and decency as determined by the building principal, the Superintendent,

> and/or the Board of Education. Student
> dress or attire will conform to the
> following minimum standards:
> . . . .
> 6. No garments or jewelry with messages,
> graphics or symbols depicting weapons or
> which are derogatory, inflammatory, sexual,
> or discriminatory, will be worn at school.

60. This same language appears in the NVHS Student Handbook & Planner 2006-2007 (NVHS Handbook) in the section entitled "Dress Guidelines."

61. The NVHS Handbook also contains a section entitled "Racial Incidents (Use of Slurs/Derogatory Comments)." This section states as follows:
> All students are valued members of our
> school community and should feel that the
> learning environment is safe and accepting.
> NVHS does not tolerate racial, ethnic or
> religious slurs, derogatory comments,
> innuendoes, or any other related action.
> Any student who participates in such
> activity will face disciplinary action.

This section on "Racial Incidents" in the NVHS Handbook cross-references §§ 710.01, 710.06, and 715.01 in the IPSD Policy. However, these sections in the IPSD Policy make no reference to "derogatory comments" or "innuendoes."

62. The NVHS Handbook also contains a section entitled "Acts of Disobedience and Misconduct." As an example of an act of misconduct, this section prohibits "[p]ossession of literature or images and/or use of slurs, derogatory comments that refer to race, ethnicity, religion, gender, sexual orientation, or disability." This section on "Acts of Disobedience and Misconduct" in the NVHS Handbook cross-references §§ 710.01 and 715.01 in the IPSD Policy.

63. The IPSD Policy Manual also contains § 730.06 entitled "Student Publications." According to this section, a school's

> superintendent sets "distribution rules" at each
> school that control if and how a student may
> distribute literature. But the policy explicitly
> prohibits students from distributing written
> material that either 1) "advocates conduct
> otherwise inconsistent with shared values of a
> civilized social order" or 2) ["]is religious in
> nature/content and could reasonably be construed
> as a violation of constitutionally required
> separation of Church and State."
>
> 64. If a student violates any of these
> policies, the student will be subject to
> discipline including but not limited to
> suspension and/or expulsion from school. This
> discipline policy is outlined in § 710.07 in the
> IPSD Policy and in the section entitled "Acts of
> Disobedience and Misconduct" in the NVHS
> Handbook.

2d Am. Compl. ¶¶ 59-64.

As to interference with Nuxoll's expression, it is

alleged:

> 72. Likewise [to plaintiff Zamecnik],
> Alex, during the 2006/2007 school year, his
> freshman year, wanted to wear T-shirt and button
> bearing the message "Be Happy, Not Gay" in April
> of 2007, on the day following the "Day of
> Silence." But for fear of punishment, he
> similarly was unable to convey his desired
> message.
>
> 73. For the balance of his time at NVHS,
> his sophomore,[3] junior, and senior years, Alex
> wants to express the message of "Be Happy, Not
> Gay" on the days following "Day of Silence" at
> NVHS. He wants to express this message through

---

[3]Although filed in October 2008, the Second Amended
Complaint did not modify allegations from the prior complaint to
make time references consistent with the date the Second Amended
Complaint was filed.

T-shirt and button. The next "Day of Silence" is scheduled to occur on April 25, 2008, and Alex wants to express the message of "Be Happy, Not Gay" on the following day.

74. Also, for his sophomore, junior, and senior years, Alex wants to communicate the message of "Be Happy, Not Gay," via T-shirt and button, on days other than the days following "Day of Silence." Alex wants to express this message at various times throughout the entire year, and throughout his remaining tenure at NVHS. In fact, Alex desires to share this message as soon as possible and would have done so on [the] first day of school, if allowed. But he is perpetually deterred from expressing the message "Be Happy, Not Gay" at any time because he fears that NVHS, pursuant to their policies, will punish him for communicating this message.

75. Alex also wants to bring his bible to school, distribute cards with bible verses during non-instructional time, and discuss his religious beliefs critical of homosexual behavior with classmates during non-instructional time. He wants to conduct these activities as soon as he can and at various times throughout the year, and throughout his remaining tenure at NVHS. But he is deterred from engaging in any of these activities at any time because he fears that NVHS, pursuant to their policies, will punish him for expressing his beliefs about homosexual conduct.

76. Despite Alex's ardent desire to express his views about homosexual behavior at NVHS, he will continue to refrain because he fears that NVHS will punish him for it. Alex knows that NVHS policies were used to silence the speech of Heidi Zamecnik, that these policies were used to silence his speech in 2006, and he knows those policies are still in place.

77. Defendants' policies, and their enforcement of which, have served in the past to quell Heidi's and Alex's messages and continue to quell Alex's messages at the school. Under their

policies and practices, Alex would be forced to cover up or remove any clothing expressing this message. If he refused to remove or cover up the expression, the school would alter his message and/or punish him, just as they did with Heidi on April 20, 2006.

78. The acts of defendants are chilling and deterring Alex's exercise of religious speech, and Alex has no adequate remedy at law to redress the violations of his rights.

2d Am. Compl. ¶¶ 72-78.

Defendants contend Nuxoll lacks standing to bring any claims because the actual facts are inconsistent with his allegations that he has been deterred from expression. Primarily relying on Nuxoll's deposition testimony, defendants contend (a) Nuxoll was not stopped from wearing his "Be Happy, Not Gay" t-shirt on the pertinent days in April 2007 and April 2008, (b) without punishment or any other deterrence, he has, during non-instructional time, been able to talk to other students about his religious views on homosexuality, and (c) he has never requested permission to engage in such expression and has never been told by NVHS officials that he cannot engage in such expression.

Defendants point to testimony that Nuxoll wore his "Be Happy, Not Gay" t-shirt at after-school track practice on the day after the Day of Silence in April 2007. Defendants also point to

Nuxoll's testimony that he wore such a t-shirt on the day after the April 2008 Day of Silence.

There is no dispute that, in April 2006, Zamecnik was prevented from displaying "Not Gay" on the back of her t-shirt. In ruling on plaintiffs' original motion for preliminary injunction related to the April 2007 day after the Day of Silence, it was found that defendants would not permit Nuxoll or Zamecnik to have "Not Gay" on the back of their t-shirts. Zamecnik v. Indian Prairie Sch. Dist. #204 Bd. of Educ., 2007 WL 1141597 *6 (N.D. Ill. April 17, 2007) ("Zamecnik I"). Opposition to the motion for preliminary injunction made clear that school officials still would not permit such a t-shirt to be worn.

Regarding Nuxoll's subsequent motion for preliminary injunction related to further expressing "Be Happy, Not Gay," including on a t-shirt on the day after the April 2008 Day of Silence, it was found:

> 36. If not prohibited by NVHS officials, Nuxoll would use the expression "Be Happy, Not Gay" to express his views about homosexuality. He would do this at NVHS on various days throughout the schoolyear during his remaining years at NVHS, including on the day after each Day of Silence. The medium for this expression would be oral statements, t-shirts, buttons, and written literature that he would distribute to other students.

> 37. Defendants will continue to prohibit the desired expression described in Finding of Fact 36 supra.

Zamecnik III, 2007 WL 4569720 at *4-5. In opposing the second motion for preliminary injunction, it was also evident that school officials would forbid such expression.

The second preliminary injunction motion was denied, but that ruling was reversed on appeal and remanded.[4] See Nuxoll, 523 F.3d 668. A few days before the April 2008 Day of Silence, an order was entered "enjoining defendants Indian Prairie School District #204 Board of Education, Michael Popp, Bryan Wells, and Stephen Daeschner, in their official capacities, and their agents and employees, from prohibiting Alexander Nuxoll from wearing a shirt with the phrase 'Be Happy, Not Gay' while in the building or on the grounds of Neuqua Valley High School on April 28, 2008." Order dated April 24, 2008 (Docket Entry 77). That school officials did not make Nuxoll remove or modify his shirt on that day cannot be attributed to voluntary conduct on the part of school officials.

---

[4]The ruling on plaintiffs' first motion for preliminary injunction, which pertained only to expression occurring the day after the April 2007 Day of Silence, became moot before being ruled upon on appeal. See Zamecnik v. Indian Prairie Sch. Dist. #204 Bd. of Educ., No. 07 C 1586 (7th Cir. Aug. 7, 2007) (unpublished order).

Since this case was first filed through and including today, a controversy has existed over whether Nuxoll will be permitted to display or say the "Be Happy, Not Gay" message while at NVHS. Nuxoll has standing to pursue relief related to not being able to display the message "Be Happy, Not Gay" on a t-shirt, button, or other media while at NVHS.

Whether there is an existing controversy regarding Nuxoll's alleged desire to "bring his bible to school, distribute cards with bible verses during non-instructional time, and discuss his religious beliefs critical of homosexual behavior with classmates during non-instructional time" is less clear. The original dispute in this case concerned the narrow issue of being able to wear a t-shirt with the phrase "Be Happy, not Gay." See Zamecnik I, 2007 WL 1141597 at *1. After the first preliminary injunction motion was denied and Zamecnik graduated, Nuxoll again moved for a preliminary injunction and to file the First Amended Complaint that included allegations of additional desired forms of expression that are repeated in the Second Amended Complaint. At the time of ruling on the second preliminary injunction motion, plaintiffs were granted leave to file the First Amended Complaint. See Zamecnik III, 2007 WL4569720 at *2. The ruling on the second preliminary injunction motion was again limited to the issue of displaying the phrase "Be Happy, Not Gay" because Nuxoll failed to meet his burden of

providing sufficient specificity as to other possible forms of expression.[5] Id. at *3-4.

Through pleadings, Nuxoll has expressed an interest in engaging in other forms of schooltime expression concerning religion and homosexuality. Also, consistent with Nuxoll's deposition testimony that is cited by defendants, Nuxoll has actually engaged in such discussions with his classmates while at school. Thus, the evidence supports a desire to engage in such expression. Also, it is undisputed that no school official has ever stopped or directly interfered with such discussions; Nuxoll has never specifically sought permission to engage in such discussions or expression; and no school official has ever expressly stated that Nuxoll cannot engage in such expression. Also, Nuxoll has never asked school officials if he can bring his bible to school nor has he ever attempted to bring his bible to school. He also has never asked permission to distribute cards with bible verses or any other literature at school and never has attempted any such distribution, nor does he even have any such cards or literature prepared. He has not specified what particular bible verses he would want to distribute. Defendants

---

[5]At the time, defendants argued there was not a sufficient case or controversy as to the additional forms of expression because Nuxoll had not attempted to engage in or seek permission for such expression. See Zamecnik III, 2007 WL 4569720 at *3. It was unnecessary to reach that issue. See id. at *3-4.

contend there cannot be any case or controversy where no direct interference has occurred and defendants have never been asked to consider whether the particular expression would be permitted. Nuxoll contends that it is sufficient that the existing written policies can be construed as prohibiting such types of expression and therefore he reasonably fears that he could suffer consequences or be prohibited from engaging in such expression.[6]

It has long been the rule that a "subjective chill" on one's exercise of First Amendment rights is not, by itself, sufficient to support standing. Laird v. Tatum, 408 U.S. 1, 13-14 (1972); Morrison v. Board of Educ. of Boyd County, 521 F.3d 602, 610 (6th Cir. 2008), cert. denied, 129 S. Ct. ___, 2009 WL 425104 (Feb. 23, 2009); Herman v. Central States, Se. & Sw. Areas Pension Fund, 2003 WL 22389072 *3 (N.D. Ill. Oct. 20, 2003), aff'd, 423 F.3d 684 (7th Cir. 2005). A subjective chill is a plaintiff's "own 'subjective apprehension and a personal (self-imposed) unwillingness to communicate.'" Morrison, 521 F.3d at 610 (quoting American Civil Liberties Union v. National Sec. Agency, 493 F.3d 644, 662 (6th Cir. 2007), cert. denied, 128 S. Ct. 1334 (2008)). Instead, a "specific present objective harm or a threat of specific future harm" is necessary

---

[6]Existing rules, however, do not relate to the possession of a bible or religious discussions.

to support standing. <u>Laird</u>, 408 U.S. at 14; <u>Morrison</u>, 521 F.3d at 608; <u>Herman</u>, 2003 WL 22389072 at *3. Cases in which plaintiffs lacked standing because the injury is too speculative generally failed because "there was either little indication in the record that the plaintiffs had firm intentions to take action that would trigger the challenged governmental action, or little indication in the record that, even if plaintiffs did take such action, they would be subjected to the challenged governmental action." <u>Associated Gen. Contractors of Cal., Inc. v. Coalition for Econ. Equity</u>, 950 F.2d 1401, 1407 (9th Cir. 1991); <u>Texas Midstream Gas Serv., L.L.C. v. City of Grand Prairie</u>, 2008 WL 5000038 *2 (N.D. Tex. Nov. 25, 2008); <u>Verizon Wireless (VAW) LLC v. City of Rio Rancho, N.M.</u>, 476 F. Supp. 2d 1325, 1331 (D.N.M. 2007). A plaintiff's intended speech may be clearly set forth, but standing may be lacking because it is still conjectural whether a policy that has not yet been enforced will be applied to stop it or any punishment imposed. See <u>Morrison</u>, 521 F.3d at 610; <u>Fieger v. Michigan Sup. Ct.</u>, 553 F.3d 955, 964 (6th Cir. 2009) (discussing <u>Morrison</u>). Conversely, standing may not be established when a policy has been previously enforced, but the plaintiff's potential speech is only vaguely articulated so it is conjectural whether the policy would prohibit it. See <u>Fieger</u>, 553 F.3d at 964.

Here, Nuxoll has established a desire to engage in speech opposing homosexual activity beyond the "Be Happy, Not Gay" t-shirt that has previously been banned. However, to the extent he has refrained from expressing such speech while at NVHS, it has been his own subjective decision to refrain. No school official has directly prevented him from engaging in such speech. Moreover, like the plaintiffs in Fieger, it is still unclear exactly what additional speech plaintiff would engage in. He wants to bring his bible to school, but there is no policy that facially prohibits that nor sufficient evidence that NVHS would enforce such a ban. He wants to distribute cards with bible verses, but does not identify the possible content of the cards and his own testimony indicates he has not yet determined what would be on the cards. He wants to have conversations with other students, but he has had such conversations without being disciplined or stopped and he has not established with any specificity the content of either those prior conversations or possible future conversations. On this record, it is purely speculative that school officials would ban the additional desired speech. Nuxoll's claim for injunctive relief will be dismissed without prejudice for lack of standing except to the

extent it is based on not being able to wear a t-shirt or otherwise express the phrase "Be Happy, Not Gay."[7]

IT IS THEREFORE ORDERED that defendants' motion to dismiss for lack of jurisdiction [112] is granted in part and denied in part. All claims for injunctive relief are dismissed without prejudice for lack of standing except the Nuxoll plaintiffs' injunctive claim based on expressing "Be Happy, Not Gay." Within two weeks, defendants shall answer the remaining allegations of the Second Amended Complaint. A status hearing will be held on April 23, 2009 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: March 24, 2009

---

[7]Since Nuxoll otherwise remains in the case and it does not involve any additional discovery, at this time, it is unnecessary to determine whether Nuxoll is also pursuing a nominal damages claim based on not being able to express "Be Happy, Not Gay."