MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HEIDI ZAMECNIK and ALEXANDER NUXOLL, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 07 C 1586 |
| INDIAN PRAIRIE SCHOOL DISTRICT #204 BOARD OF EDUCATION and BRYAN WELLS, individually and in his official capacity as Dean of Students Neuqua Valley High School, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

Alexander Nuxoll ("Nuxoll") and Heidi Zamecnik

("Zamecnik" or "Heidi")[1] are, respectively, a current and former

student at Neuqua Valley High School ("NVHS"), which is part of

Indian Prairie School District No. 204 ("IPSD"). The high school

is located in Naperville, Illinois, one of Chicago's most

populous suburbs, and has approximately 4200 students, including

---

[1] At the time this suit was brought, Nuxoll and Zamecnik were minors and the suit was brought on their behalf by their respective parents. Earlier, Zamecnik reached the age of majority and was substituted for her parents as a plaintiff. Recently, Nuxoll also reached the age of majority and therefore will be substituted for his parents as a plaintiff.

a variety of races, religions, ethnic backgrounds, and sexual
orientations.  Zamecnik graduated in June 2007 and Nuxoll is
currently a senior.  The IPSD Board of Education and NVHS's Dean
of Students are named as defendants.[2]  Following this court's
ruling on defendants' motion to dismiss, see Zamecnik v. Indian
Prairie Sch. Dist. No. 204 Bd. of Educ., 2009 WL 805654 (N.D.
Ill. March 24, 2009) ("Zamecnik IV"), the remaining claims are
relatively narrow.  Zamecnik seeks nominal damages for an
incident in April 2006 during which she was precluded from
wearing a t-shirt that stated "Be Happy, Not Gay."  The Dean of
Students modified the shirt to simply read "Be Happy."  Nuxoll is
seeking nominal damages for not being able to display the message
"Be Happy, Not Gay" on a t-shirt or button in April 2007.  Also,
Nuxoll continues to seek injunctive relief precluding a
prohibition from expressing the message "Be Happy, Not Gay" on a
t-shirt, button, or other media while at school.  Despite the
prior ruling narrowing the scope of potential equitable relief,
Nuxoll is also seeking injunctive and declaratory relief based on

---

[2]IPSD Superintendent Dr. Stephen Daeschner and NVHS
Principal Michael Popp are named in their official capacities
only.  The parties' fact statements support that Daeschner has
not been Superintendent since June 2009 and Popp has not been
Principal since 2008.  The current persons in those positions are
not identified.  Since IPSD is itself a defendant, naming
Daeschner and Popp as defendants is unnecessarily duplicative.
The current persons in those positions need not be substituted.
Daeschner and Popp will be dismissed without prejudice.

a broader facial challenge to certain school rules.  Presently
pending is plaintiffs' motion for summary judgment.

On a motion for summary judgment, the entire record is
considered with all reasonable inferences drawn in favor of the
nonmovant and all factual disputes resolved in favor of the
nonmovant.  <u>Crawford v. Metropolitan Gov't of Nashville &</u>
<u>Davidson County, Tenn.</u>, 129 S. Ct. 846, 849 (2009); <u>Lewis v.</u>
<u>CITGO Petroleum Corp.</u>, 561 F.3d 698, 702 (7th Cir. 2009);
<u>Freeland v. Enodis Corp.</u>, 540 F.3d 721, 737 (7th Cir. 2008).  The
burden of establishing a lack of any genuine issue of material
fact rests on the movant.  <u>Delta Consulting Group, Inc. v.</u>
<u>R. Randle Constr., Inc.</u>, 554 F.3d 1133, 1137 (7th Cir. 2009);
<u>Hicks v. Midwest Transit, Inc.</u>, 500 F.3d 647, 651 (7th Cir.
2007); <u>Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer</u>,
472 F.3d 943, 946 (7th Cir. 2007); <u>Outlaw v. Newkirk</u>, 259 F.3d
833, 837 (7th Cir. 2001).  The nonmovant, however, must make a
showing sufficient to establish any essential element for which
he or it will bear the burden of proof at trial.  <u>Celotex</u>
<u>Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>National Athletic</u>
<u>Sportswear, Inc. v. Westfield Ins. Co.</u>, 528 F.3d 508, 512
(7th Cir. 2008); <u>Hicks</u>, 500 F.3d at 651.  The movant need not
provide affidavits or deposition testimony showing the
nonexistence of such essential elements.  <u>Celotex</u>, 477 U.S.
at 324; <u>Freundt v. Allied Tube & Conduit Corp.</u>, 2007 WL 4219417

*2 (N.D. Ill. Nov. 29, 2007); O'Brien v. Encotech Constr.,
2004 WL 609798 *1 (N.D. Ill. March 23, 2004). It is not
sufficient to show evidence of purportedly disputed facts if
those facts are not plausible in light of the entire record. See
Lorillard Tobacco Co. v. A & E Oil, Inc., 503 F.3d 588, 594-95
(7th Cir. 2007); Yasak v. Retirement Bd. of Policemen's Annuity &
Benefit Fund of Chicago, 357 F.3d 677, 679 (7th Cir. 2004); NLFC,
Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.
1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir.
1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473,
476-77 (7th Cir. 1988); Freundt, 2007 WL 4219417 at *2. As the
Seventh Circuit has summarized:

> The party moving for summary judgment
> carries the initial burden of production to
> identify "those portions of the pleadings,
> depositions, answers to interrogatories, and
> admissions on file, together with the affidavits,
> if any, which it believes demonstrate the absence
> of a genuine issue of material fact." Logan v.
> Commercial Union Ins. Co., 96 F.3d 971, 978 (7th
> Cir. 1996) (citing Celotex Corp. v. Catrett,
> 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d
> 265 (1986) (citation and internal quotation
> omitted)). The moving party may discharge this
> burden by "'showing'--that is, pointing out to
> the district court--that there is an absence of
> evidence to support the nonmoving party's case."
> Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once
> the moving party satisfies this burden, the
> nonmovant must "set forth specific facts showing
> that there is a genuine issue for trial." Fed.
> R. Civ. P. 56(e). "The nonmovant must do
> more, however, than demonstrate some factual
> disagreement between the parties; the issue

must be 'material.'"  Logan, 96 F.3d at 978.
"Irrelevant or unnecessary facts do not preclude
summary judgment even when they are in dispute."
Id. (citation omitted).  In determining whether
the nonmovant has identified a "material" issue
of fact for trial, we are guided by the
applicable substantive law; "[o]nly disputes that
could affect the outcome of the suit under
governing law will properly preclude the entry of
summary judgment."  McGinn v. Burlington Northern
R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996)
(citation omitted).  Furthermore, a factual
dispute is "genuine" for summary judgment
purposes only when there is "sufficient evidence
favoring the nonmoving party for a jury to return
a verdict for that party."  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986).  Hence, a "metaphysical
doubt" regarding the existence of a genuine fact
issue is not enough to stave off summary
judgment, and "the nonmovant fails to demonstrate
a genuine issue for trial 'where the record taken
as a whole could not lead a rational trier of
fact to find for the non-moving party . . . .'"
Logan, 96 F.3d at 978 (quoting Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
(1986)).

Outlaw, 259 F.3d at 837.

Legal parameters for this case have been established by
the Seventh Circuit's ruling regarding the grant of a preliminary
injunction.  See Nuxoll v. Indian Prairie Sch. Dist. #204,
523 F.3d 668 (7th Cir. 2008) ("Nuxoll").  On the facts before it,
the Seventh Circuit held that it would be a First Amendment
violation to prevent Nuxoll from displaying the message "Be
Happy, Not Gay" while at NVHS, there being insufficient proof of
"facts which might reasonably lead school officials to forecast

- 5 -

substantial disruption." <u>Nuxoll</u>, 523 F.3d at 673-76 (quoting <u>Boucher v. School Bd. of Sch. Dist. of Greenfield</u>, 134 F.3d 821, 827-28 (7th Cir. 1998) (quoting <u>Tinker v. Des Moines Indep. Cmty. Sch. Dist.</u>, 393 U.S. 503, 514 (1969))). The same result should be reached on the pending summary judgment motion unless the facts assumed to be true for purposes of summary judgment are materially different from the facts that were before the Seventh Circuit. Also, there may be issues presently before the court that were not before the Seventh Circuit. <u>Cf. id.</u> at 676.

Plaintiffs contend the Seventh Circuit simply applied the standard set forth in <u>Tinker</u>.[3] <u>Nuxoll</u> does apply the general standard derived from <u>Tinker</u> that high school officials may justify the suppression of student speech based on "facts which might reasonably lead school officials to forecast substantial disruption." <u>Nuxoll</u>, 523 F.3d at 673 (quoting <u>Boucher</u>, 134 F.3d at 827-28 (quoting <u>Tinker</u>, 393 U.S. at 514)). The Seventh Circuit construed the meaning of "substantial disruption" in light of the precedents that followed <u>Tinker</u>. It was noted that <u>Morse v. Frederick</u>, 551 U.S. 393 (2007), clearly establishes that encouraging the use of illegal drugs is speech that causes a substantial disruption and that <u>Morse</u> also stands for the

---

[3]Judge Rovner's concurrence strongly disagrees with such an assessment. <u>Nuxoll</u>, 523 F.3d at 676-80 (Rovner, J., concurring in judgment).

principle that a substantial disruption need not be violent in nature, but can be based on the potential psychological effect on students. Nuxoll, 523 F.3d at 674. Particularly in light of Morse and Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675 (1986), the Seventh Circuit concluded "that if there is reason to think that a particular type of student speech will lead to a decline in students' test scores, an upsurge in truancy, or other symptoms of a sick school--symptoms therefore of substantial disruption--the school can forbid the speech." Nuxoll, 523 F.3d at 674. The burden is on NVHS to point to facts which might reasonably lead school officials to forecast substantial disruption.

The Seventh Circuit notes that defendants' written "rule forbidding 'derogatory comments,' oral or written, 'that refer to race, ethnicity, religion, gender, sexual orientation, or disability,'" id. at 670, "appears to satisfy this test. It seeks to maintain a civilized school environment conducive to learning, and it does so in an even-handed way. It is not as if the school forbade only derogatory comments that refer, say, to religion, a prohibition that would signal a belief that being religious merits special protection. The list of protected characteristics in the rule appears to cover the full spectrum of highly sensitive personal-identity characteristics. And the ban on derogatory words is general. Nuxoll can't say 'homosexuals

are going to Hell' (though he can advocate heterosexuality on religious grounds) and it cannot be said back to him that 'homophobes are closeted homosexuals.'" <u>Id.</u> at 674 (citations omitted). The Seventh Circuit made clear its view that this rule does not improperly discriminate based on viewpoint, distinguishing it from the speech at issue in <u>Tinker</u>. <u>Nuxoll</u>, 523 F.3d at 673-75.

It was expressly held that "the plaintiff is not entitled to a preliminary injunction against the rule." <u>Id.</u> at 675. Unless the facts on summary judgment are materially different from those before the Seventh Circuit, this court is bound to follow the Seventh Circuit's ruling that the school rules at issue do not discriminate based on viewpoint and are not facially invalid. The Seventh Circuit, however, did not resolve any issue of the rules being vague or overbroad. <u>See Nuxoll</u>, 523 F.3d at 675 (peripheral reference to vagueness).

The Seventh Circuit found the phrase "Be Happy, Not Gay" to be "only tepidly negative" and that "it is highly speculative that [it] would have even a slight tendency to provoke [harassment], or for that matter to poison the educational atmosphere." <u>Nuxoll</u>, 523 F.3d at 676. It was held that, on the facts before the Seventh Circuit, defendants had not presented a sufficient basis to justify banning the wearing of the t-shirt. <u>Id.</u>

The facts before the court on summary judgment must be
viewed in light of the foregoing standards.  Resolving all
genuine factual disputes and drawing all reasonable inferences in
defendants' favor, the facts assumed to be true for purposes of
ruling on plaintiffs' summary judgment motion are as follows.

Zamecnik was a student a NVHS from Fall 2003 until she
graduated in May 2007.  Nuxoll has been a student at NVHS since
2006.  He is presently a senior, presumably graduating in Spring
2010.  Plaintiffs are professing Christians, who, as a tenet of
their faith, sincerely believe that the Bible teaches homosexual
behavior is immoral, damaging to the practitioners, damaging to
human society in general, and contrary to the teachings of
scripture.

NVHS was first opened in 1997.  It is a school with a low
truancy rate, high graduation rate, and very high academic
performance.  IPSD has made a considerable effort to create a
positive and tolerant school environment with an emphasis on
respectful attitude and discourse.  It has policies, rules, and a
mission statement emphasizing respect for others as part of its
educational program.  NVHS students attend "advisory" classes in
which the importance of respect for people's differences and the
harmfulness of derogatory and demeaning communications are
discussed.  A "culture of respect" is actively fostered that

- 9 -

promotes tolerance and respect for other students.  This culture
of respect is especially important to maintaining order.

IPSD Policy Manual § 710.07 concerns "Student
Appearance."  It prohibits the wearing of "garments or jewelry
with messages, graphics or symbols depicting weapons or which are
derogatory, inflammatory, sexual or discriminatory."  Similar
language is in the NVHS Student Handbook.  The Handbook's "Acts
of disobedience and misconduct" section prohibits "[p]ossession
of literature or images and/or use of slurs, derogatory comments
that refer to race, ethnicity, religion, gender, sexual
orientation, or disability."

The Gay/Straight Alliance ("GSA") is an officially
recognized student club at NVHS.  Its stated mission is:  "In
order to foster a safer and more accepting environment of
students of all sexual orientations, the mission of [GSA] is to:
Offer support and education.  Promise awareness and human rights.
Build and preserve dignity and respect of all individuals."  An
annual activity of GSA is a "Day of Silence" at NVHS.  This is
part of a national event sponsored by the national Gay, Lesbian,
and Straight Educational Network.  Students who participate wear
a sticker identifying their participation and generally remain
silent during the day.  However, they are still required to speak
if necessary for a class or when necessary for communication with

a member of NVHS's staff.  A number of NVHS teachers and other
staff wear t-shirts or other items supporting the Day of Silence.

The April 19, 2006 Day of Silence occurred without
incident.  Zamecnik, however, had seen some people wearing a
t-shirt that had the phrase "Be Who You Are," which she construed
as promoting homosexuality.  The next day[4] she came to school
with a t-shirt that read "My Day of Silence, Straight Alliance"
on the front and "Be Happy, Not Gay" on the back.  A few students
expressed disagreement with the shirt, making comments directly
to Zamecnik.  Unidentified reports of students complaining about
Zamecnik's t-shirt and characterizing it as derogatory were made
to NVHS administrators, including Dean Wells.

Wells met with Heidi to discuss her t-shirt.  Wells spoke
about respect for others and he informed her (based on reports
from school staff) that several students had been offended by her
t-shirt and some students had perceived it as being anti-gay,

---

[4]For a number of years, on the day before or after the
Day of Silence, the Alliance Defense Fund ("ADF") promotes an
event it calls the "Day of Truth."  ADF's website states:  "The
Day of Truth was established to counter the promotion of the
homosexual agenda and express an opposing viewpoint from a
Christian perspective."  See Zamecnik ex rel. Zamecnik v. Indian
Prairie Sch. Dist. No. 204 Bd. of Educ., 2007 WL 1141597 *5
(N.D. Ill. April 17, 2007) ("Zamecnik I"), appeal dismissed
as moot, No. 07-1937 (7th Cir. Aug. 7, 2007) ("Zamecnik II")
(unpublished order).  Although plaintiffs have chosen to
express their messages on the same dates as ADF's Days of
Truth, plaintiffs have acted independently and express their
own message, not the specific messages recommended for the
Day of Truth.

harassing, and derogatory.  Wells did not question the phrase on
the front of the t-shirt, only the phrase on back.  Wells then
had a 45-minute telephone conversation with Zamecnik's mother
("Linda").  During that conversation, Wells indicated that the
shirt could be modified to be acceptable.  Wells mentioned "Be
Happy, Be Straight" as an acceptable alternative.  He did not
specifically mention any other alternative.  Linda agreed to
allow Wells to modify Heidi's t-shirt to be acceptable to the
school.  While Linda may have thought Wells would change the back
of the shirt to "Be Happy, Be Straight," that may not have been
part of the agreement.  When Linda had Wells put Heidi on the
telephone to tell her about the agreement, Linda did not tell
Heidi "Be Happy, Be Straight" would be the modification.  Linda
only referred to an acceptable modification.  Wells understood
the agreement to be any change acceptable to the school.  Wells
had a female counselor black out "Not Gay" so the back of Heidi's
shirt read, "Be Happy."  At some point after Linda picked Heidi
up after school, Linda discovered the modification and complained
it was not what she had agreed would happen.

        After Zamecnik left Wells's office, Wells met with a
female student who was in tears over Zamecnik's t-shirt, even in
the altered form.  She noted that, even in altered form, it was
known what the original message was.  The student believed the
message was derogatory and attacked those who supported the Day

of Silence.  Wells told the student that Zamecnik also had a
right to express her views as long as not in a derogatory manner
and that he believed the modification was satisfactory.

During the 2006 Day of Truth, a number of students
approached plaintiff in an antagonistic manner and criticized her
for wearing the t-shirt.  A male student, whom Zamecnik believes
is homosexual, confronted her in the hallway and screamed at her
that she was evil and a bitch.  Another student whom Zamecnik
believes is homosexual called her a bitch a number of times.  A
female student told Zamecnik she was disgusting.  Another female
student told Zamecnik she was mean and an evil person who wanted
gays to die.  Another female student told plaintiff she was mean,
had hurt a lot of people's feelings, and was insensitive.

No manner of discipline was imposed for Zamecnik's
wearing of the t-shirt or on the conduct of any student.  Wells
was not personally motivated by disagreement with Zamecnik's
message.  However, he believed that the "Be Happy, Not Gay"
message was disrupting the educational process at NVHS and could
affect the emotional well being of other students.

During Zamecnik's senior year, approximately 100 persons
joined a Facebook page called "Be Happy, Not Heidi."  It is
reasonable to infer that some were NVHS students.  Some threats
to Zamecnik were posted on the page.  The Zamecniks reported to
NVHS's police liaison officer one threat they received.  For the

2007 Day of Silence, Linda requested a private security escort
for Zamecnik and NVHS instead assigned a female staff member to
escort her during the day.  After Zamecnik graduated, threats
remained on the Internet, including threats to Linda.

Shortly before the April 2007 Day of Silence, plaintiffs
filed the present lawsuit.  Plaintiffs were denied a preliminary
injunction seeking to prevent defendants from prohibiting them
from displaying the "Be Happy, Not Gay" message for the 2007 Day
of Truth.  See Zamecnik ex rel. Zamecnik v. Indian Prairie Sch.
Dist. No. 204 Bd. of Educ., 2007 WL 1141597 (N.D. Ill. April 17,
2007) ("Zamecnik I"), appeal dismissed as moot, No. 07-1937
(7th Cir. Aug. 7, 2007) ("Zamecnik II") (unpublished order).
Zamecnik did not display the "Be Happy, Not Gay" message during
the 2007 Day of Truth.  Nuxoll did not display the message during
the school day, but did wear a "Be Happy, Not Gay" t-shirt for a
three-hour, after-school track practice at NVHS.  He was not
disciplined for doing so.  No incidents or confrontations
occurred at the track practice.

Nuxoll requested a preliminary injunction for the 2008
Day of Truth.[5]  That motion was initially denied, but the Seventh
Circuit reversed the denial and a preliminary injunction was
entered enjoining defendants from prohibiting Nuxoll from wearing

---

[5]At this point, Zamecnik had graduated.

a "Be Happy, Not Gay" shirt at NVHS during the 2008 Day of Truth. The preliminary injunction was limited to the one day. <u>See Zamecnik v. Indian Prairie School Dist. No. 204 Bd. of Educ.</u>, 619 F. Supp. 2d 517 (N.D. Ill. 2007) ("<u>Zamecnik III</u>"), <u>rev'd in part sub nom.</u>, <u>Nuxoll</u>, <u>supra</u>; Order dated April 24, 2008 [Docket Entry 77]. Nuxoll wore a "Be Happy, Not Gay" t-shirt at school during the 2008 Day of Truth. There is no specific evidence of any disorder or substantial disruption occurring that day. A few students commented to Nuxoll that he should not pick on or attack homosexuals. For the 2009 Day of Truth, Nuxoll did not display, on his shirt or otherwise, the "Be Happy, Not Gay" message nor any other related message.

Nuxoll has not asked NVHS officials for permission to bring his Bible to school or to distribute cards with Bible verses, nor has he ever been told he cannot do either. He has been permitted to discuss his religious beliefs about homosexual behavior with other students and he has never been told by any NVHS employee that he is prohibited from doing so. Nuxoll testified that he believed administrators would stop him from bringing his Bible or passing out literature based on unspecified rules contained in the Student Handbook.[6] No request having been

---

[6] Plaintiffs include ISPD Policy 730.06 in their statement of facts. This rule, however, only prohibits distribution of religious materials in a manner that could be construed as violating the establishment clause. In other words, it only

presented to the NVHS administration, this issue is not properly before the court.

Defendants present the report of their expert, Stephen Russell, who has a doctorate in sociology.  He cites to publications he refers to as supporting that (a) sexual orientation discrimination is pervasive in schools; (b) it is the most pervasive type of bias-motivated bullying; (c) school policies are crucial to establishing a safe, harassment-free school climate; (d) students who are harassed, bullied, or feel unsafe are at risk for negative educational and health outcomes and this risk is exacerbated for students perceived as lesbian, gay, bisexual, or transgender ("LGBT"); (e) when a school's ability to provide a safe, harassment-free environment is disrupted by bias-motivated discrimination, including anti-LGBT discrimination, it potentially results in lower student achievement, violence, and/or economic costs; and (f) GSAs and their activities like the "Day of Silence" serve several purposes for students:  education and safety, interpersonal support, and recreation.  Dr. Russell does not rely on any facts or research directly considering the effect of the phrase "Be Happy, Not Gay" being displayed at NVHS or any other school.  The publications he

---

prohibits distribution of religious materials that are indicated as being speech of the school, or at least sponsored by the school.  This rule is not a basis for Nuxoll fearing he is prohibited from engaging in his own religious speech.

relies on are similar to those described by the Seventh Circuit

as "suggestive." Nuxoll, 523 F.3d at 671.

Dr. Russell concludes:

it is my opinion that the phrase "be happy, not
gay" is not "tepid" in a public school setting;
its presence in the school environment undermines
a safe, harassment-free environment.  School
attendance is mandatory for students; LGBT
students (and their allies) would not have the
choice to avoid such a slur.  It is particularly
insidious because it references a long-standing
stereotype that gay people are unhappy, yet
appears to be a simple play on words.  In sum,
the best available evidence suggests that there
are risks associated with anti-LGBT slurs and
derogatory remarks--risks for individual
students, as well as for schools and school
districts.  In my opinion, such risks are
compelling, legitimate reasons to justify
the policies and actions of [IPSD].  The
District's current policies and procedures
serve an important function to minimize student
harassment, thereby create a safe, harassment-
free environment for all students.

The issue is whether the defendants are able to point to

facts sufficient to support a reasonable expectation of

disruption.  Dr. Russell's opinions, however, are largely

unsupported conclusions.  See Ciomber v. Cooperative Plus, Inc.,

527 F.3d 635, 641 (7th Cir. 2008); Salgado by Salgado v. General

Motors Corp., 150 F.3d 735, 741 n.6 (7th Cir. 1998).  Because the

conclusions in Dr. Russell's report are insufficiently supported,

they cannot establish a genuine factual dispute.  Since

defendants' expert report is insufficient, accordingly, it is

unnecessary to consider plaintiffs' expert Dr. George Rekers's criticisms of Dr. Russell's opinions.

The burden is on defendants to establish facts supporting a reasonable forecast of a substantial disruption. See Nuxoll, 523 F.3d at 673; J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 593 F.3d 286, 299 (3d Cir. 2010); Walker-Serrano ex rel. Walker v. Leonard, 325 F.3d 412, 416 (3d Cir. 2003) (favorably cited in Nuxoll, 523 F.3d at 673).  When First Amendment concerns are involved, some deference must be accorded to school officials' decisions regarding the safety and education of students.  LaVine v. Blaine Sch. Dist., 257 F.3d 981, 992 (9th Cir. 2001) (favorably cited in Nuxoll, 523 F.3d at 673); Governor Wentworth Reg'l Sch. Dist. v. Hendrickson, 421 F. Supp. 2d 410, 424 (D.N.H.), appeal dismissed, 201 Fed. App'x 7 (1st Cir. 2006); Demers ex rel. Demers v. Leominster Sch. Dep't, 263 F. Supp. 2d 195, 202 (D. Mass. 2003).  The forecast must be reasonable, Nuxoll, 523 F.3d at 673, and mere "speculation" will not be sufficient, id. at 676.

Defendants present evidence that some students had negative reactions to Zamecnik's message.  Five students, at least two of whom apparently were gay, expressed their reactions directly to Zamecnik during the 2006 Day of Truth.  There is, however, no evidence of violence at any time or that any of these

students' schoolwork suffered as a result of viewing the shirt or that any other type of "substantial disruption" occurred.

A group of people, some being NVHS students, later joined a website opposed to Zamecnik's conduct.  However, it is not reasonable to infer that this was a direct response to her wearing of the t-shirt.  The website did not arise until almost a year after the 2006 Day of Truth when Zamecnik went more public with her advocacy by filing the present lawsuit.  The website is not the school site.  Defendants do not present evidence supporting that plaintiffs' actual wearing of their t-shirts caused a substantial disruption.

The forecast of disruption must be based on the possible effects of permitting to be displayed, by any student who so desires, "Be Happy, Not Gay" and other negative statements about homosexuality with similar levels of tepidness/virulence. Defendants, however, have not submitted evidence supporting that it is reasonable to forecast a substantial disruption resulting from wider displays of such messages.  According defendants the deference that is due on educational and disciplinary matters, the limited anecdotal evidence they have submitted is insufficient.  On the record before the court, a reasonable trier of fact could not find that defendants have met their burden as to forecasting a substantial disruption.  As the Seventh Circuit concluded regarding the preliminary injunction, it must be held

that a sufficient basis did not exist to stop plaintiffs from displaying "Be Happy, Not Gay" in 2006 and 2007.  As against defendant IPSD, plaintiffs are entitled to nominal damages of $25.00 each for being precluded from displaying "Be Happy, Not Gay" on the particular days in question.  Nuxoll is also entitled to a permanent injunction precluding defendants from preventing the display of such a t-shirt message.

The claim against Wells in his individual capacity is different.  As was held in <u>Zamecnik III</u>, 619 F. Supp. 2d at 526-29, the remaining claim against Wells in his individual capacity is based on the allegation that he prevented Zamecnik from displaying the message:  "Be Happy, Be Straight."  Factual disputes exist as to whether Zamecnik, either directly or through her mother's request, sought to display that particular message during the 2006 Day of Truth and Wells prevented her.  Summary judgment as against Wells individually will be denied.

In <u>Zamecnik IV</u>, 2009 WL 805654 at *5-6, it was held that Nuxoll lacked standing to pursue equitable relief other than an injunction based on being prevented from expressing "Be Happy, Not Gay."  His own subjective apprehension and self-imposed unwillingness to communicate ("subjective chill") is insufficient to support standing.  On the present motion, Nuxoll has not presented facts different from those previously considered in

Zamecnik IV.  The Zamecnik IV decision will not be vacated.[7]
Nuxoll lacks standing to pursue equitable relief other than based
on the message "Be Happy, Not Gay."  However, since a rule has
been applied to prevent plaintiff from expressing "Be Happy,
Not Gay," he is suffering an injury that provides him standing
to challenge the rule as overbroad and vague.[8]  See United
States v. Williams, 553 U.S. 285, 128 S. Ct. 1830, 1845 (2008);
Fieger v. Michigan Sup. Ct., 553 F.3d 955, 861-63 (6th Cir.
2009).

Nuxoll contends the prohibitions contained in IPSD Policy
§ 710.07, and related Student Handbook provisions, are overbroad
because they encompass communications that cannot reasonably be
expected to cause substantial disruption and vague because
derogatory is a vague term.  These rules prohibit displaying at
school messages that are "derogatory, inflammatory, . . . or
discriminatory," including "derogatory comments that refer to
race, ethnicity, religion, gender, sexual orientation, or
disability."  As an alternative, plaintiff suggests (in a

---

[7]Although the actual order entered referred only to
dismissing injunctive claims, the related claims for declaratory
relief were also under consideration.  See Zamecnik IV, 2009 WL
805654 at *1.

[8]Since there are insufficient facts to support that
Nuxoll is being prevented from bringing to school (or
distributing at school) religious literature, Nuxoll lacks
standing to challenge IPSD Policy 730.06.

footnote) adding provisions to the rules that are drawn from those at issue in another case.  See Morrison v. Board of Educ. of Boyd County, 521 F.3d 602, 605-07 (6th Cir. 2008).  He apparently suggests adding a qualifier such as, to be prohibited, messages of the above type must be so severe, pervasive, or objectively offensive that they tend to adversely affect a student's education or create a hostile or abusive educational environment.  He also suggests adding language similar to:  "The civil exchange of opinions or debate does not constitute harassment.  Students may not, however, engage in behavior that interferes with the rights of another student or materially and substantially disrupts the educational process."  Id. at 607. Plaintiff does not provide the exact language he is suggesting as an alternative, does not identify the precise language that he suggests deleting from the existing rules, nor does he suggest where the new language should be inserted.

In Nuxoll, 523 F.3d at 675, the Seventh Circuit warned plaintiff that he is required to suggest alternative language that would not be overbroad or vague.  He still has not done this.  Moreover, this is not a mere technical exercise. Following Nuxoll, including in response to the motion for summary judgment, defendants have acknowledged that their restriction on this type of speech must be based on a reasonable forecast of a substantial disruption.  Defendants have said that they are not

necessarily opposed to amending school rules to be expressly consistent with this restriction as long as it allows them to also exercise the discretion accorded school officials in making such an evaluation.  Prior to plaintiffs moving for summary judgment, defendants expressed an interest in settlement discussions, but plaintiffs expressed no such interest.  If precise alternative language were to be proposed, perhaps the parties could reach agreement on revisions to IPSD rules.  Like the Seventh Circuit, this court declines to presently reach the overbreadth and vagueness issues.

The summary judgment motion will be granted in part and denied in part.  After consulting with defendants, plaintiff Nuxoll shall submit a proposed order for injunctive relief. Prior to the next status hearing, the parties shall meet to discuss the possibility of settling all or some of the remaining issues in this case, which could be in the form of a final order.

IT IS THEREFORE ORDERED that plaintiff Alexander Nuxoll in his own capacity is substituted in to replace plaintiffs Michael and Penny Nuxoll as the representatives of Alexander Nuxoll.  The Clerk of the Court is directed to amend the docket accordingly.  Defendants Dr. Stephen Daeschner and Michael Popp are dismissed without prejudice.  Plaintiffs' motion for summary judgment [156] is granted in part and denied in part.  Plaintiffs are entitled to nominal damages of $25.00 each as against

defendant Indian Prairie School District #204 Board of Education.
Plaintiff Nuxoll shall submit a draft order for injunctive
relief.  A status hearing is set for May 20, 2010 at 11:00 a.m.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED:  APRIL  2 9 , 2010